A01A1784, A01A1785. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. VAUGHN et al.; and vice versa.
(558 SE2d 769)

JOHNSON, Presiding Judge.

Thirteen-year-old Carolyn Vaughn was struck by a pickup truck as she crossed a highway to board a school bus operated by the Coffee County Board of Education. She and her parents sued the truck driver, the school bus driver, and the Board of Education. The Vaughns served State Farm Mutual Automobile Insurance Company as the school board's uninsured motorist coverage carrier. State Farm responded to the complaint arguing, among other things, that uninsured motorist coverage would not be provided because Carolyn Vaughn was not an insured given the facts of this case. State Farm moved for summary judgment, contending that the only issue is whether Carolyn Vaughn was an occupant of the insured vehicle (the school bus) at the time of the accident, thereby triggering the policy's uninsured motorist provision. The Vaughns moved for partial summary judgment on the same issue, urging that because Carolyn Vaughn was using the school bus when she was struck by the uninsured driver, the incident comes within the policy's uninsured motorist coverage provision. The trial court denied the motions. Both parties filed applications for interlocutory appeals, which we granted.

The relevant facts are undisputed. Carolyn Vaughn and her brother were waiting for the school bus near their home. The children stood on the eastbound side of the Georgia 206 Connector, a two-lane road with vehicles traveling east and west. The school bus, which was traveling west, activated its flashing lights and stop arm and then stopped directly across from the children. The bus driver had previously instructed the children to stand on the eastbound side of the road and wait for her to motion for them to cross. They waited for the bus driver's signal, and when the driver motioned for them to do so, the children began to cross the eastbound lane. Just then, a pickup truck traveling behind the school bus drove into the eastbound lane to pass the bus and struck Carolyn Vaughn. The truck driver was underinsured.

## Case No. A01A1784

1. State Farm contends that the trial court erred in denying its motion for summary judgment. According to State Farm, the insur-

ance policy provides uninsured motorist protection only to persons *occupying* the insured vehicle, and Carolyn Vaughn was not occupying the bus at the time of the accident. We are not persuaded by State Farm's argument.

The insurance policy at issue defines "insured" as a person occupying the insured vehicle and defines "occupying" as "in, on, entering or alighting from" the vehicle. For purposes of uninsured motorist coverage, however, the uninsured motorist statute provides that an insured is anyone who, with the insured's consent, *uses* an insured vehicle.[1] In this case, the policy's definition of an insured as someone "in, on, entering or alighting from" a vehicle is more restrictive than the statute's definition of an insured as someone who *uses* a vehicle. Where there is a conflict in an insurance policy and the uninsured motorist statute, the statute controls.[2] Therefore, the statutory definition of insured (i.e., a person who uses an insured vehicle) controls.

The appellate courts of this state have adopted a liberal definition of the term "use" as contained in the uninsured motorist statute.[3] As to the meaning of "use," the question is whether the injury originated from, had its origin in, grew out of, or flowed from the use of the vehicle.[4] The "use" of a vehicle extends beyond actual physical contact[5] and includes, to some extent, the process of loading and unloading a school bus.[6] Whether a school bus is being "used" in loading and unloading children is dependent to a great extent upon the circumstances of the case.[7]

In *Ga. Farm &c. Ins. Co. v. Greene*,[8] this Court ruled that a child who had exited a school bus and was crossing the street to his house was "using" the school bus for purposes of an insurance policy. We held that "use" of a school bus includes transportation of children to and from school and the unloading of the school bus.[9] We added that such unloading encompasses not only depositing children outside the

---

[1] OCGA § 33-7-11 (b) (1) (B).

[2] *Northbrook Property &c. Ins. Co. v. Merchant*, 215 Ga. App. 273, 274 (1) (450 SE2d 425) (1994); *Hartford Accident &c. Co. v. Booker*, 140 Ga. App. 3, 4 (1) (230 SE2d 70) (1976).

[3] *Northbrook Property*, supra.

[4] *Atlanta Postal Credit Union v. Intl. Indem. Co.*, 228 Ga. App. 887, 890 (1) (a) (494 SE2d 348) (1997).

[5] *Northbrook Property*, supra.

[6] See *Cawthon v. Waco Fire &c. Ins. Co.*, 183 Ga. App. 238, 241 (358 SE2d 615) (1987) (loading of children is included in the definition of "use" of a school bus, though independent, voluntary actions taken by a school child cannot, alone, initiate the loading procedure). Compare *Brock v. Sumter County School Bd.*, 246 Ga. App. 815, 818 (1) (542 SE2d 547) (2000) (injured child's actions did not involve "use" of the school bus when she acted contrary to the driver's and her mother's instructions by suddenly entering the road while waiting at bus stop).

[7] *Roberts v. Burke County School Dist.*, 267 Ga. 665, 667 (482 SE2d 283) (1997).

[8] 174 Ga. App. 120 (329 SE2d 204) (1985) (physical precedent only).

[9] Id.

bus, but assuring that they reach a place of safety; reaching a place of safety may include crossing a street.[10]

In *Roberts*,[11] the Supreme Court approved the holding in *Greene,* citing the fact that the school bus was, "in essence, 'standing guard with its lights flashing, its stop signals on and all visual signals functioning' with the disembarking children 'under its protection.' " The *Roberts* court noted that in *Greene,* the bus was still being utilized by the children crossing the street upon disembarking.[12] It added that the school bus, which was stopped and had its lights flashing, was still operating as a school bus in relation to the child when she got off the bus and crossed the road.[13]

In this case, when the bus driver stopped the bus so that the Vaughn children could board, the lights on the bus were flashing, and the driver had extended the stop arm from the side of the bus and signaled the children to cross the road. Use of the school bus in this case involved the crossing of the road, a possibility that the parties to the insurance contract certainly must have contemplated.[14] Inasmuch as Carolyn Vaughn was using the school bus at the time the accident occurred, and the uninsured motorist statute requires coverage where a person is using the insured vehicle, the trial court correctly denied State Farm's motion for summary judgment.

## Case No. A01A1785

2. Based on the foregoing, the Vaughns were entitled to judgment as a matter of law on the issue of whether Carolyn Vaughn is an insured within the meaning of the uninsured motorist statute. Therefore, the trial court erred in denying their motion for summary judgment on this issue. We note that because no other liability or coverage issues were raised in the motions for summary judgment, we do not decide any other issues raised in the underlying case at this time.

*Judgment affirmed in Case No. A01A1784. Judgment reversed in Case No. A01A1785. Ruffin and Ellington, JJ., concur.*

---

[10] Id.
[11] Supra.
[12] Id.
[13] Id.
[14] See *Atlanta Postal Credit Union,* supra (in defining the word "use" in connection with the uninsured motorist statute, we must look to the contemplation of the parties in entering into the insurance contract and consider how the vehicle would be used in the business' operation).

DECIDED JANUARY 10, 2002.

*Sims, Fleming & Spurlin, John C. Spurlin,* for appellant.
*Berrien L. Sutton,* for appellees.